**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Elias Gomez RIVERA,**
**Defendant–Appellant.**

**No. 89–1843**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 3, 1990.

---

Charles A. Friedman (court-appointed), McCrarey & Friedman, Fort Worth, Tex., for defendant-appellant.

Randell P. Means, Asst. U.S. Atty., Marvin Collins, Fort Worth, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The defendant, Elias Gomez Rivera, pled guilty to distribution of .28 grams of heroin in violation of 21 U.S.C. § 841(a)(1) and was

sentenced to 92 months of imprisonment. Rivera appeals, challenging the constitutionality of the Sentencing Guidelines and arguing that the district court improperly applied the Guidelines. We uphold the constitutionality of the Guidelines, but we vacate Rivera's sentence and remand the case to the district court for resentencing because we conclude that there are insufficient factual findings to support the application of the Guidelines in this case.

## I

Rivera was indicted in four counts of a twenty-two count indictment alleging the felony offenses of conspiracy to distribute heroin, possession with intent to distribute heroin, distribution of heroin, and maintaining a place for the purpose of distribution of heroin. A superseding indictment was later returned, maintaining the same charges against Rivera. Count 11 of that indictment charged Rivera with distribution of .28 grams of heroin. Count 12 charged Rivera and Sylvia B. Salinas with distribution of .09 grams of heroin.

Rivera pled guilty to the distribution of .28 grams of heroin, as charged in count 11 of the superseding indictment. A factual resume was submitted for the trial court's consideration at the time of the entry of the guilty plea. That factual resume provides:

> Beginning sometime prior to August 1, 1988 and continuing until December 12, 1988, Romero Perez, Jr., Defendant, controlled a residence located at 212 E. Pafford, Fort Worth, Texas. During the time Perez controlled this residence he directed the distribution of the controlled substance heroin from the residence and provided amounts of heroin to various individuals in order that the heroin could be distributed to others. During this time period, Perez made amounts of heroin available, either directly or through other persons, to Robert Olguin, Sylvia B. Salinas, Elias Gomez Rivera, Ramona L. Pena, and Teodolinda Herrera, for the purpose of enabling such persons to distribute heroin to others. Perez allowed Salinas, Rivera, Pena, Herrera, and others, to use the residence at 212 East Pafford as a place from which heroin could be sold. Perez also provided amounts of heroin to Robert Olguin at said residence in order that Olguin could distribute the heroin to persons at other locations.

> On August 2, 1988, Teodolinda Herrera distributed approximately .51 grams of heroin to a police officer at 212 East Pafford, Fort Worth, Texas, in return for the payment by the officer of $300.00 in currency. Perez was present during this sale of heroin and directed Herrera to conduct such sales with heroin which Perez had provided.

> On each of the following dates, Perez provided amounts of heroin to Robert Olguin in order that Olguin could distribute the heroin to other persons for money paid to Olguin, which was then paid to Perez:

| | | | |
|---|---|---|---|
| 1. | August 11, 1988 | 24.6 grams | $ 6,500. |
| 2. | September 22, 1988 | 24.1 grams | $ 6,000. |
| 3. | September 26, 1988 | 24.9 grams | $ 6,000. |
| 4. | December 12, 1988 | 149.1 grams | $36,000.* |

> (* The $36,000.00 was the intended sales price of the approximately six ounces of heroin provided by Perez to Olguin. The money was not paid due to the arrest of Olguin during such distribution.)

> On November 23 and 29, 1988, Perez made heroin available to Sylvia Salinas at the residence at 212 East Pafford and allowed Salinas to conduct sales of heroin from the residence.

> On November 28 and 29, 1988, Perez made heroin available to Elias Gomez Rivera and allowed Rivera to conduct sales of heroin from the residence. Rivera distributed approximately .28 grams of heroin to a police officer in return for payment of $40.00 in currency on November 28, 1988. Rivera distributed approximately .09 grams of heroin to a police officer in return for payment of $30.00 in currency on November 29, 1988.

> On December 1, 1988, Perez made heroin available to Ramona L. Pena and allowed Pena to conduct sales of heroin from the same residence.

At the plea hearing, the trial court asked Rivera if anything in the factual resume needed to be corrected. Rivera's counsel replied that Rivera stipulated only to the

matters of which he had personal knowledge, and disavowed the parts of the factual resume of which he did not and could not have knowledge. This objection was clarified at the sentencing hearing. Rivera stipulated to the events of November 28, 1988 and November 29, 1988, and stated that he had no knowledge of the other events described in the factual resume.

At the sentencing hearing, Rivera contested the district court's inclusion of quantities of narcotics attributed to his co-defendants in the quantity of drugs used in calculating his base offense level. The district court adopted the findings of fact in the pre-sentence report prepared by the probation officer from the factual resume, and denied Rivera's challenges to the Guidelines. The pre-sentence report adopted by the district court computed Rivera's base offense level as 26, based on the total of 224.47 grams of heroin involved in the indictment. Two points were added for the involvement of firearms in the offense, and two points were deducted for Rivera's acceptance of responsibility. With a criminal history category of IV, the Guidelines prescribe a sentencing range of 92–115 months imprisonment, a term of supervised release of three to five years, a fine range of $12,500 to $1,000,000, and a special assessment of $50. Rivera received a sentence of 92 months imprisonment, a supervised release term of three years, and a special assessment of $50. No fine was assessed. Rivera appeals.

## II

### A

Rivera argues that the district court erred in adopting the pre-sentence report's inclusion of quantities of heroin attributable to his co-defendants in calculating his base offense level. Rivera concedes that, in addition to the .28 grams of heroin that he pled guilty to distributing, the district court should have included the delivery of .09 grams of heroin charged in Count 12. He argues, however, that the quantities of drugs attributable to his co-defendants should not have been included.

A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the "clearly erroneous" standard. The district court may properly consider a variety of evidence, not limited to amounts seized or specified in the indictment, in making such findings. *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989). The district court's sentence will be upheld so long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous. *United States v. Buenrostro*, 868 F.2d 135, 136–37 (5th Cir. 1989).

In applying the Sentencing Guidelines, the first step is to "[d]etermine the applicable offense guideline section from Chapter Two." Sentencing Guidelines, § 1B1.1(a). Section 2D1.1 of the Guidelines is the guideline section most applicable to the offense of distribution of heroin. Under § 2D1.1, a crime involving .37 grams of heroin, the amount Rivera concedes, has a base offense level of 12, while a crime involving 224.47 grams of heroin, the amount the government contends is applicable, has a base offense level of 26.

On the record before us, we cannot agree with the government that the facts established that Rivera made an agreement with anyone other than Perez to distribute heroin from the house located at 212 East Pafford Street, or that Rivera knew or should have known of the heroin sales made by his co-defendants. At most, the record shows that, at some time on November 29, 1988, the date on which Rivera admits selling .28 grams of heroin, Salinas also sold heroin at the same location. Although the indictment charged Rivera with conspiring with Perez and the other co-defendants, and although there is apparently no dispute that there was a conspiracy involving at least 224.47 grams of heroin, the extent to which Rivera was involved with any more of it than .37 grams was disputed. Rivera refused to stipulate to any facts regarding the distribution of heroin by his co-defendants, and denied any knowledge of such distribution by his co-defendants. The record before us contains

no factual finding that Rivera was part of a jointly-undertaken scheme to distribute heroin with any of his co-defendants other than Perez. The district court did not find that Rivera was aware of his co-defendants' participation in the heroin distribution scheme, or that he should have reasonably foreseen the distribution of heroin by his co-defendants. In the absence of a finding that Rivera knew or should have known of the distribution of heroin by his co-defendants, or in the absence of a joint undertaking or plan, the quantities of heroin distributed by persons other than Rivera should not have been included in the calculation of his base offense level. We therefore remand the case to allow the district court to reconsider its sentence and to state its findings in this respect.

### B

■ Rivera also argues that the district court erred in adding two points to his base offense level for the involvement of firearms in the offense. The government does not respond to this argument.

Guideline § 2D1.1(b)(1) directs the sentencing court to increase the offense level two points "[i]f a firearm or other dangerous weapon was possessed during commission of [a drug-related] offense." In the pre-sentence report adopted by the district court, two points were added to Rivera's base offense level because of two firearms found at 229 Vista Way, Benbrook, Texas, the residence of co-defendants Perez and Herrera. The distribution of heroin to which Rivera pled guilty occurred at 212 East Pafford Street, Fort Worth, Texas. There is nothing in the record to show that Rivera had any knowledge of the firearms at 229 Vista Way or that those firearms were either present or involved in any way with Rivera's distribution of heroin on November 28 and 29, 1988, the only events to which Rivera stipulated. The pre-sentence report indicated that this factor "may warrant departure below the guidelines":

> Defendant's base offense level was enhanced by two levels because two firearms were involved in the offense. The guns actually belonged to Perez and

Herrera, not defendant Rivera. The guns were also confiscated at 229 Vista Way, Benbrook, Tx. rather than at 212 E. Pafford where defendant was dealing heroin. Since the guns do not belong to defendant Rivera and were not confiscated by investigative agents at the residence where defendant was dealing heroin, the Court could consider a departure below the guideline range.

Application Note 3 to § 2D1.1 states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

The record does not indicate whether the district court considered the appropriateness of an enhancement for weapon possession. On remand, the district court should consider whether such an enhancement is justified. If the court finds that it is "clearly improbable" that the weapons confiscated at 229 Vista Way were connected with Rivera's offense, the enhancement should not be applied to Rivera; in any event, the court should state the basis for the finding it makes. *See United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir.1989).

### C

■ Rivera next argues that the district court erred in not reducing his offense level because of his minimal involvement. Guideline § 3B1.2 states: "Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels." The presentence report adopted by the district court found that, although Rivera was less culpable than Perez, Olguin, and Herrera, because Rivera did distribute heroin for Perez at 212 East Pafford along with other co-defendants, and because Rivera was aware that the residence was used for the purpose of distributing heroin, he

therefore did not qualify as a minimal or minor participant within the meaning of Guideline § 3B1.2. We cannot say that this finding adopted by the district court is clearly erroneous, and we therefore reject Rivera's argument that the district court erred in not reducing his offense level by four points for his minimal involvement.

## III

■ Finally, Rivera argues that the Guidelines unconstitutionally deprived him of the effective assistance of counsel guaranteed by the sixth amendment because the Guidelines did not permit his attorney to make an accurate estimate of the sentence he would receive if he pled guilty. Specifically, Rivera contends the Guidelines are unconstitutional because they did not permit his attorney to inform him of the minimum sentence for the charge to which he pled guilty.

The Constitution requires that a defendant be advised and understand the consequences of a guilty plea. "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as the [defendant] 'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir.), *cert. denied*, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982) (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982)).

At the time of the entry of his guilty plea, Rivera was arraigned by the trial court and, pursuant to Rule 11, was advised that the maximum penalty for the offense of distribution of .28 grams of heroin was a fine of $1,000,000, a term of imprisonment of twenty years, plus a term of supervised release of at least three years and a mandatory special assessment of $50. Rivera was further advised that the penalty he would receive would be determined by the court and that he should not depend or rely upon any statement or promise made by anyone, whether connected with a law enforcement agency or the government, as to what penalty would be assessed against him. Rivera advised the court that he understood that the maximum penalty he might receive included a twenty-year prison term.

The Sentencing Guidelines make no change in substantive penalties and do not prevent counsel from advising a defendant of what the law provides. The Guidelines do not provide for "mandatory" minimum penalties depending on the level of the offense. Rather, the sentencing ranges specified in the Guidelines are designed to provide a structure for case analysis so as to minimize disparate sentencing on like facts. A trial court may depart from the Guidelines if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the ... guidelines," and if it states specific reasons explaining its departure. Guideline § 5K2.0; *United States v. Campbell*, 878 F.2d 164, 165 (5th Cir.1989). Rivera was well aware that the offense to which he pled guilty carried a possible maximum sentence of twenty years. Although Rivera obviously expected to receive a lesser sentence than the one imposed, the inability of Rivera's counsel to correctly predict the sentence does not constitute ineffective assistance of counsel. No provision of the Sentencing Guidelines, either as drafted or as applied to Rivera, operated to impair the ability of his counsel to investigate the facts of the offense, to negotiate a lesser plea with the prosecution, to consult with and advise Rivera about the sentencing exposure, or to present Rivera's position at sentencing. We therefore conclude that the Guidelines did not operate to deprive Rivera of the effective assistance of counsel.

## IV

Rivera's sentence is therefore vacated, and the cause is remanded to the district court for reconsideration, reimposition of sentence and, if necessary, for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.