**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory Vincent MITCHELL, Defendant–Appellant.**

No. 91–1864.

United States Court of Appeals, Fifth Circuit.

June 19, 1992.

S. Michael McColloch, McColl & McColloch, Dallas, Tex., for Mitchell.

James T. Jacks, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for U.S.

Before HILL,* KING, and DAVIS, Circuit Judges.

PER CURIAM:

Gregory Vincent Mitchell appeals the sentence he received after pleading guilty to a one-count superseding information charging conspiracy to distribute and conspiracy to possess with intent to distribute cocaine. Mitchell, a minor participant in the conspiracy, contends that the court erred in (1) calculating his base offense level in accordance with the amount of drugs involved in the conspiracy as a whole; (2) failing to rule on the Government's motion for downward departure at the time of sentencing; (3) refusing to depart downward to compensate for the Sentencing Guidelines' overrepresentation of the seriousness of his criminal history; (4) refusing to depart downward on account of his unusual personal characteristics; and (5) sentencing him without a finding of

* Senior Circuit Judge of the Eleventh Circuit, sitting by designation.

guilt. We agree with Mitchell on points one and two, and so vacate and remand for resentencing.

## I. BACKGROUND

By superseding information, the Government charged Mitchell and five other persons[1] with conspiring to distribute more than 500 grams of cocaine between January 1987 and April 3, 1989. The information did not specifically identify the amount any individual defendant had allegedly conspired to distribute. In the factual resume accompanying Mitchell's guilty plea, Mitchell admitted to a conspiracy to distribute cocaine with other persons in the Dallas area lasting from October 1988 to April 3, 1989. The factual resume named as coconspirators Paul Weber, Jimmie Charles Cook, Gustavo Gonzalo Giraldo–Lara and Aura Rey Giraldo. Mitchell admitted to acquiring cocaine "on numerous occasions from the coconspirators Cook and Weber" and in turn distributing it to other persons.

The Presentence Report (PSR) filed in connection with Mitchell's sentencing indicates that Weber obtained 20 kilograms of cocaine in Florida on April 1, 1989. Weber sent Freddie Lynn Sudduth and Debra Sudduth back to Dallas with the 20 kilograms, and instructed them to contact Cook. The Sudduths were arrested the next day when they made the delivery to Cook in Dallas, and federal agents seized the cocaine. Meanwhile, on April 1, Cook had alerted Weber's customers that a shipment of cocaine was to arrive in Dallas shortly. Customers were to contact Cook by paging Weber's beeper, and Cook would call them back to arrange a meeting place. On April 2, all the persons named in the superseding information, including Mitchell, contacted Cook to arrange the purchase of various amounts of cocaine. Mitchell requested "a couple of ounces" of cocaine,[2] but Cook told Mitchell that he could not promise to hold any back. Mitchell again asked Cook to hold some cocaine for him, and promised to call the next day when he had the money. Mitchell was arrested shortly thereafter.

At the plea hearing on August 25, 1989, the district judge found that each defendant pleading guilty[3] was doing so freely and voluntarily, but he reserved acceptance of the pleas until such time as he could review the PSRs. The PSR for Mitchell originally arrived at an offense level of 32 and a criminal history category of V, thus leading to a sentencing range of 188–235 months imprisonment. United States Sentencing Guidelines (U.S.S.G.) § 5A, Sentencing Table. The offense level was calculated on the basis of the full 20 kilograms of cocaine involved in the April 1 shipment. Under the drug quantity table accompanying U.S.S.G. § 2D1.1, the base offense level was 34.[4] The PSR recommended a two-level reduction for acceptance of responsibility.

Mitchell objected to basing the offense level on the full 20 kilograms, arguing that it should have been based on the fact that he pled guilty to an information charging conspiracy to distribute more than 500 grams. He contended that the proper base offense level was 26, the level which, under the version of the drug quantity table in effect at the time of the offense, covered 500 to 1,900 grams. Mitchell recognized that if the base offense level were reduced to 26, his minor role in the offense would have been acknowledged and he would not be entitled to a downward adjustment for minor participant status. However, he asserted, if the probation officer rejected a

---

1. Aura Rey Giraldo, Freddie Lynn Sudduth, Victor Homero Cordova, John Victor Denson, and Mallory M. Pierce. All five of these persons, and Mitchell, were named in the original eighteen-count indictment.

2. One ounce equals approximately 26 grams.

3. Defendants Freddie Sudduth, Cordova, Denson, Pierce and Mitchell pleaded guilty on that date.

4. Mitchell pled guilty to conspiracy, an offense covered by U.S.S.G. § 2D1.4, but that section provides that the offense level for a conspiracy shall be the same as if the object of the conspiracy had been completed. As the object of the conspiracy was distribution and possession with intent to distribute, sentencing was appropriate under § 2D1.1.

reduction and continued to hold him accountable under the Guidelines for the entire 20 kilograms, he was entitled to a four-level reduction for minor participant status. Thus, factoring in the two-level reduction for acceptance of responsibility under both scenarios, Mitchell contended that his total offense level should be either 24 or 28.[5]

The probation officer rejected a reduction of the base offense level to 26, asserting that "DEA investigation shows the amount to be distributed to co-offenders and codefendants to be approximately 20 kilograms." Applying U.S.S.G. § 1B1.3 (Relevant Conduct), he stated that Mitchell was to be sentenced for the entire 20 kilograms. The officer did grant the four-level downward adjustment for minimal participant status, however, leaving the final adjusted offense level at 28 (he did not disturb the initial two-level reduction for acceptance of responsibility). He rejected all of Mitchell's other objections. Combined with his criminal history category of V, Mitchell's new sentencing range was 130–162 months imprisonment.

At the sentencing hearing on December 15, 1989, the trial judge accepted the PSR's calculation of the offense level. He observed that, although all the evidence showed Mitchell's involvement with the 20 kilogram shipment was limited to the two ounces he ordered from Cook, Mitchell admitted to having made small transactions with the coconspirators on other occasions. Accordingly, he concluded, it was reasonably foreseeable that Mitchell knew his distributors were dealing in amounts larger than his individual purchases and larger even than 500 grams. The judge expressed the view that the four-level downward adjustment for minor participant status sufficiently accounted for the fact that Mitchell was involved with only a small portion of the 20 kilogram shipment.

Mitchell moved for a downward departure on the grounds that he had a difficult upbringing and alcohol problems, and that his criminal history score of V overrepresented his criminal background. The judge

refused both requests. The Government filed a motion under U.S.S.G. § 5K1.1 for downward departure on account of Mitchell's substantial cooperation in the investigation, but the judge, after conducting an off-the-record bench conference with the attorneys, indicated that for confidential reasons he would hold this motion open. The judge sentenced Mitchell to the minimum of 130 months imprisonment, followed by a five-year term of supervised release and a $50 special assessment. At no time during the sentencing proceeding, however, did the judge formally accept the plea agreement or Mitchell's guilty plea. A judgment finding Mitchell guilty was entered on December 18, three days after the sentencing hearing. Mitchell's motion for a new trial was denied, and this appeal followed.

## II. DISCUSSION

### A. *Offense Level Based on 20 Kilograms*

Mitchell first argues that the district court erred in accepting the PSR's recommendation that the sentence be based on the 20 kilogram shipment obtained by Cook on April 1. He does not suggest that he should be sentenced based on the two ounces he sought to purchase from Cook; rather, he contends that the proper quantity was the "amount greater than 500 grams" listed in the superseding information. Thus, he again urges that the proper base offense level was 26, so that with a two-level reduction for acceptance of responsibility the sentencing range would be 92–115 months.

The district court's findings about the quantity of drugs on which a sentence should be based are factual findings which we review for clear error. *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.1990). A finding will not satisfy this deferential standard " 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

5. Mitchell also raised objections to the PSI's inclusion of some of his earlier criminal epi- sodes in calculating the criminal history score. He has abandoned these objections on appeal.

committed.'" *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)); *see also United States v. Sanders,* 942 F.2d 894, 897 (5th Cir.1991) ("a factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole"). The district court is not limited to considering the amount of drugs seized or specified in the charging instrument, *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989), but may consider amounts that were part of a common plan or scheme to distribute. *United States v. Ponce,* 917 F.2d 841, 844 (5th Cir.1990) (per curiam), *cert. denied,* — U.S. —, 111 S.Ct. 1398, 113 L.Ed.2d 453 (1991); *United States v. Byrd,* 898 F.2d 450, 452 (5th Cir.1990). The ultimate sentence will be upheld so long as it results from a correct application of the Guidelines to factual findings that are not clearly erroneous. *Rivera,* 898 F.2d at 445; *United States v. Buenrostro,* 868 F.2d 135, 136–37 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

 The district court clearly was not limited to considering the two ounces Mitchell sought to purchase or the "amount greater than 500 grams" charged in the superseding information. On the other hand, the court could not simply presume that Mitchell, to whom the evidence did not link more than the two ounces, was a participant in a conspiracy to distribute 20 kilograms of cocaine. The Guidelines, of course, provide the starting point for determining the appropriate quantity in this case. Mitchell pled guilty to a conspiracy involving a controlled substance, so, under § 2D1.4, he must be sentenced as if the object of the conspiracy had been achieved. Thus, the offense level derives from § 2D1.1(a)(3) (Drug Quantity Table). Where, as here, the Guidelines specify more than one base offense level, the conduct relevant to determining the offense level is governed by § 1B1.3(a). That section provides that the base offense level shall be determined on the basis of, *inter alia:*

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

. . . .

Application Note 1 to § 1B1.3 explains relevant conduct in the case of a conspiracy:

In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.[6]

It is well established that district courts must consider the extent to which a larger drug enterprise is reasonably foreseeable to defendants involved in small or isolated transactions. *See, e.g., United States v. Mickens,* 926 F.2d 1323, 1332 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992); *United States v. Edwards,* 945 F.2d 1387, 1394 (7th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct.

---

**6.** This language became effective with the November 1, 1989 amendments to the Guidelines. The language in effect at the time Mitchell committed the offense was substantially similar. *See* U.S.S.G. Guidelines Manual, Appendix C, amendment 78.

1590, 118 L.Ed.2d 308 (1992); *United States v. North*, 900 F.2d 131, 134 (8th Cir.1990); *cf. United States v. Miranda-Ortiz*, 926 F.2d 172, 178 (2d Cir.) (late-entering coconspirators may be sentenced only on basis of amounts they reasonably could have foreseen conspiracy distributed before they entered), *cert. denied,* — U.S. ——, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991); *United States v. Matthews*, 942 F.2d 779 (10th Cir.1991) (same).

We have dealt with the foreseeability of a larger drug operation on several occasions. In *United States v. Warters*, 885 F.2d 1266 (5th Cir.1989), the defendant pled guilty to misprision of a felony, admitting that he knew of a conspiracy to possess with intent to distribute 20 pounds of marijuana. An earlier indictment had charged the defendant and others with a conspiracy involving more than 100 kilograms of marijuana. As directed by the Guidelines, the PSR initially turned to the guideline governing the underlying offense (conspiracy), which in turn resulted in application of § 2D1.1(a)(3) (Drug Quantity Table). The PSR calculated the base offense level according to· a conspiracy involving 500 pounds (about 227 kilograms). The PSR's recitation of the facts indicated that the defendant was a key player in the conspiracy. He and Hailey (a coconspirator) met with the undercover DEA agent who was to supply 500 pounds of marijuana, showed a portion of the money, and assisted in the delivery arrangement. The defendant objected to use of the full 500 pounds, arguing that he had intended to purchase only 20 pounds from Hailey and distribute it, but the district court accepted the PSR's recommended offense level. We remanded because the district court did not resolve the disputed question of quantity on the record. *Id.* at 1272. We pointed out that the district court was required to make a finding of the amount the defendant knew or should or have known or foreseen was involved. *Id.* at 1273; *see also United States v. Thompson*, 944 F.2d 1331, 1343–44 (7th Cir.1991) (district court must make a determination of amounts that were reasonably foreseeable to defendants), *cert. denied,* — U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). However, we observed that the record (presumably the factual scenario outlined in the PSR) would support a finding that the defendant knew or should have known of a conspiracy involving more than 100 kilograms. *Warters*, 885 F.2d at 1273.

We also remanded in *Rivera*, a case very much like the instant one, but we expressed the view there that the record would not support a finding of reasonable foreseeability. Rivera pled guilty to distributing .28 grams of heroin. As had several other persons, Rivera purchased from a single large supplier operating out of a house in Fort Worth. The factual resume accompanying the guilty plea discussed the amounts other persons had purchased from the supplier, but it mentioned Rivera only once: the supplier had "made heroin available" to Rivera and Rivera distributed a total of .37 grams to police officers on two occasions. Only one other person was mentioned as having obtained heroin on the same date as Rivera. 898 F.2d at 444. Although the district court accepted the PSR's use of the total amount of heroin in the indictment (224.47 grams) in reaching a base offense level for Rivera, we held that the established facts could not support a conclusion that Rivera conspired with other persons to distribute heroin or knew or could have foreseen the amount distributed from the house. *Id.* at 445. We thus remanded to allow the district court to determine whether Rivera knew or reasonably could have foreseen the extent of the operation. *Id.* at 446. We distinguished *Rivera* in *Ponce*, holding that a defendant who sold one ounce (approximately 26 grams) of cocaine could be sentenced on the basis of the 231.3 grams implicated in transactions involving Ponce's coconspirators. In *Ponce*, the district court had made explicit findings (unlike in *Rivera*), and those findings indicated that (1) Ponce was indicted for conspiracy; (2) the cocaine sales documented by the PSR took place in a restaurant allegedly owned by a coconspirator; and (3) one of the sales took place with the aid of a coconspirator. 917 F.2d at 845–46. Although we considered the

district court's findings somewhat sparse, the record supported the court's conclusion that Ponce could be sentenced based on the full amount of cocaine.

In the case before us, the district court made what we consider, following *Ponce*, a finding concerning the disputed question of quantity. Thus, we do not face the purely mechanical problem, as in *Warters* and *Rivera*, of a lack of any basis for imputing the total amount of drugs involved in the conspiracy to a lesser participant. The court stated at Mitchell's sentencing:

> The delivery that took place that night, there was 20 kilograms transported from Florida to Dallas. It is absolutely correct that [Mitchell] made a transaction involving a small amount of cocaine. It's my understanding that he also admits that he had done that on other occasions with Mr. Weber or the other fellow whose name I've forgotten now, who was much more involved. But I have rejected [other defendants' challenges to using the 20 kilograms], as I will this one. I think that under the 5th Circuit case, when someone even though they're buying smaller amounts concede that they have been buying on a number of occasions, that it is certainly reasonably foreseeable to realize that the person who's distributing the cocaine is dealing in more than just 4 or 5 ounces of cocaine each time or 500 grams of cocaine.

As in *Rivera*, however, we cannot conclude that on the facts established in the record the full extent of the conspiracy to distribute 20 kilograms was reasonably foreseeable to Mitchell.

The Government asserts that "[i]t is apparent from the evidence as a whole that the appellant knew the conspiracy was distributing much more cocaine and involved many more people than just himself and the cocaine which he was distributing." The Government can only support this theory, however, by extrapolating from the facts. First, the Government asserts that because Mitchell knew a new shipment had arrived and because of his "persistence" in attempting to obtain cocaine from Cook he was aware of the amount involved in the conspiracy. The PSR indicated, however, that Cook notified customers of the new shipment and solicited their business. Moreover, it cannot be inferred from Mitchell's persistence in attempting to purchase on April 2 that he had entered into a wide-ranging conspiracy or should have been aware of one. It merely signified his strong desire to obtain cocaine, a desire that is consistent with the history of drug problems outlined in the PSR. Second, and somewhat more substantially, the Government points to the statement in the PSR that Mitchell admitted introducing Weber to other customers. This fact may be probative of Mitchell's knowledge of the extent of the conspiracy. *Cf. United States v. Boyer*, 931 F.2d 1201, 1205–06 (7th Cir.) (defendant who introduced purchaser to supplier for purpose of three kilogram purchase could foresee transaction of that amount, and so could be sentenced on basis of three kilograms despite fact that actual transaction involved one kilogram), *cert. denied*, —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991). But while it is reasonable to infer that Mitchell knew Cook and Weber were dealing in amounts larger than a few ounces—particularly since Mitchell admitted to a conspiracy to distribute over 500 grams—it is quite a leap from one-half a kilogram to 20 kilograms.

■ The Government also relies on the proposition that a longtime relationship with suppliers indicates knowledge of the scope of a drug distribution operation. We recognized that this could be true in *United States v. Devine*, 934 F.2d 1325 (5th Cir.1991), *cert. denied*, —— U.S. ——, ——, 112 S.Ct. 349, 911, 116 L.Ed.2d 288, 811 —— U.S. ——, 112 S.Ct. 952, 117 L.Ed.2d 120 (1992), but in that case the evidence clearly showed an association lasting several years between the kingpin (Robinette) and the two lower-echelon defendants who disputed their sentences (Barker and Martinez). Martinez was Robinette's girlfriend, and had purchased several expensive automobiles over the years with cash from an unknown source. And both Barker and Martinez wore a necklace signifying membership in the inner circle of the conspiracy. *Id.* at 1337. On the basis of this evidence, we considered the case easily dis-

tinguishable from *Rivera* and upheld sentences based on amounts larger than Barker and Martinez distributed. *Id.* at 1338.

Here, by contrast, there is only the barest evidence that Mitchell had a relationship Cook and Weber, and there is no indication of the regularity of his purchases, the amounts he purchased, or the length of time he had been associated with his suppliers. Moreover, as in *Rivera*, there is no indication that Mitchell was aware of the other members of the conspiracy or the extent of their purchases. *See North*, 900 F.2d at 134 (where defendant was unaware of amounts of other persons' purchases from supplier, he could not be sentenced on basis of supplier's entire distribution). Indeed, the district court stated that, of all the persons charged, Mitchell was "down at the bottom because there were people out buying seven kilos or five kilos." While Mitchell may have purchased small amounts on several occasions, nothing suggests that he was dealing in the range of 20 kilograms. *Compare United States v. Thomas*, 963 F.2d 63, 64 (5th Cir.1992) (evidence of drug trade ledgers assigning defendant a code number and of substantial cocaine purchases over period of time justified imputing knowledge of larger conspiracy to defendant); *United States v. Sergio*, 934 F.2d 875, 879 (7th Cir.1991) (continuous involvement with conspiracy raises inference that defendant was aware of and involved in conspiracy to greater extent than isolated transaction); *United States v. Christopher*, 923 F.2d 1545, 1555 (11th Cir. 1991) (sentencing court properly attributed large quantity to defendant, where physical evidence seized in search of home and testimony of witness connected him with large quantity). On the evidence in this record, we are left with the "definite and firm conviction" that it was a mistake to find the full 20 kilogram conspiracy reasonably foreseeable to Mitchell. Accordingly, we must remand for reconsideration of Mitchell's sentence.

B. *Refusal to Rule on the Government's Motion for Downward Departure*

The district judge, for reasons he decided not to place on the record, withheld a ruling on the Government's motion under § 5K1.1 of the Guidelines for a downward departure. As of this writing, the court has not yet ruled on the motion. Both Mitchell and the Government agree that holding the motion open until after sentencing was error, *see United States v. Howard*, 902 F.2d 894 (11th Cir.1990), and we comply with their request that we remand to enable the judge to rule on this motion.

■ As the court explained in *Howard*, § 5K1.1 operates at sentencing, while Federal Rule of Criminal Procedure 35(b), under which the Government may move to resentence a defendant to reflect substantial assistance rendered after the original sentence, operates after sentence has been imposed. *Howard*, 902 F.2d at 896. Under the version of Rule 35(b) in effect at the time *Howard* was decided, a court could grant a reduction only within one year after imposition of the sentence. We agree with the *Howard* court's assessment that a refusal to rule on a § 5K1.1 motion would "conflict with this temporal framework." We also do not find that the amendment to Rule 35(b) effective December 1, 1991 affects this analysis. The amendment allows a court to consider a Government sentence reduction motion made more than one year after imposition of sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until more than one year after imposition of sentence. In the usual case where no information or evidence comes to light more than one year after imposition of sentence, the conflict with the one year timetable discussed in *Howard* is precisely the same.

■ The court in *Howard* also was concerned that postponing a § 5K1.1 ruling would vest the district court with discretion to resentence that was taken away at the time the Sentencing Guidelines took effect. Prior to November 1, 1987, a court could resentence on its own motion following imposition of sentence. Amendments to Rule 35(b) effective that same date removed that

discretion by permitting resentencing only on the Government's motion. We agree with the Eleventh Circuit that "[p]ostponing a section 5K1.1 motion returns that discretion to the court, contrary to the dictates of Rule 35." *Howard*, 902 F.2d at 897. Thus, the district court is required to rule on the Government's § 5K1.1 motion before it imposes a sentence on Mitchell.

### C. Additional Arguments

██ Although we remand for resentencing, in the interest of judicial economy we briefly address Mitchell's remaining contentions. Mitchell contends that the district court erred in refusing to depart downward to reflect the facts of his history of growing up in a troubled family (including an alcoholic father, childhood abuse, and a mother who was hospitalized for psychiatric disorders) and his longtime abuse of drugs and alcohol. While Mitchell cites many cases in which courts have upheld downward departures, he ignores precedent in this circuit which holds that we "will not review a district court's refusal to depart from the Guidelines, unless the refusal was in violation of the law." *United States v. Hatchett*, 923 F.2d 369, 373 (5th Cir.1991); *see also United States v. McKnight*, 953 F.2d 898, 906 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2975, 119 L.Ed.2d 594 (1992).

In *McKnight*, we indicated that we have yet to resolve the question whether "violation of the law" exists when a district court refuses to depart on the erroneous understanding that the guidelines do not permit downward departure, but found that the court had not articulated this as its reason for refusing the departure. We have the same situation here. After Mitchell's attorney described Mitchell's troubled background, the district judge stated:

I have not taken into consideration any of the social factors that you have asked me to do so. I disagree with you on that point.... One of my problems in taking all of [these] social factors into consideration is I think you can go too far with that argument, you wind up with judges around the country giving different sentences for the same crime, the exact

thing that the guidelines tell us we're not supposed to do any more.

As in *McKnight*, this statement indicates that the judge's refusal to depart downward was based not on his view that the guidelines precluded him from doing so as a matter of law, but because he did not believe departure was warranted under the facts of this case. *Compare United States v. Sharpsteen*, 913 F.2d 59, 63 (2d Cir.1990) (remand necessary because it was not clear whether district judge recognized that he had authority to depart downward on account of defendant's family ties and responsibilities). Thus, we do not review the district court's refusal to depart downward.

Mitchell also argues that the district court should have departed downward because his criminal history category overrepresented the seriousness of his criminal history. Mitchell's challenge to the use of various offenses in calculating the criminal history score has been abandoned on appeal, and his argument is simply that the court should have departed downward. Once again, however, the sentencing transcript does not indicate that the court was under the impression that the guidelines absolutely precluded downward departure on this basis. Accordingly, we do not review the court's refusal to depart downward. *McKnight*, 953 F.2d at 906.

██ Finally, Mitchell contends that the district court erred in failing to formally accept his guilty plea before imposing the sentence. The court's judgment finding Mitchell guilty was entered December 18, 1989, three days after sentencing. While we agree that it is preferable for judges to announce their acceptances of guilty pleas in open court prior to sentencing, any error that occurred here was harmless. The judge made an explicit finding at the plea hearing that Mitchell was pleading guilty freely and voluntarily, so the delay of three days between imposition of sentence and the formal finding of guilt deprived Mitchell of no constitutional or statutory right. Moreover, the transcript of the sentencing proceedings indicates that all parties under-

stood that the judge had found Mitchell guilty and accepted the plea agreement.

## III. CONCLUSION

Mitchell must be resentenced to reflect the unforeseeability to him of the extent of the conspiracy, and the district judge must rule on the Government's § 5K1.1 motion prior to imposing the sentence. For these reasons, Mitchell's sentence is VACATED and REMANDED for further proceedings consistent with this opinion.