**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 91-1764
_____


UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                    versus

JOHN COBB and JACK R. COBB,

                                    Defendants-Appellants.

_____

Appeals from the United States District Court
For the Northern District of Texas
_____
(October 5, 1992)


Before VAN GRAAFEILAND,[*] KING, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    A jury convicted John Cobb and Jack Cobb of conspiracy to possess, transport, and sell stolen trucks, in violation of 18 U.S.C. § 371; and convicted Jack Cobb of interstate transportation of stolen trucks, in violation of 18 U.S.C. § 2312.  The Cobbs appeal their convictions, arguing that the district court:  (a) erroneously accepted the prosecutor's explanations for striking the only two African-American veniremen; (b) erred in holding that a warrantless search of Jack Cobb's business was authorized by a Texas statute permitting warrantless searches of automobile salvage

_____

    [*] Senior Circuit Judge of the Second Circuit, sitting by designation.

dealerships; (c) should have dismissed the indictment against John Cobb with prejudice when it dismissed that indictment pursuant to the Speedy Trial Act; and (d) erred in refusing to sever the trials of the two defendants.  We affirm.

# I

Jack Cobb owned a trucking company in Haltom City, near Fort Worth, and his son, John Cobb, worked for the company as a dispatcher.  Law enforcement officers discovered stolen trucks and trailers in the possession of the trucking company's employees. Both Jack and John Cobb were indicted for conspiracy to possess, transport, and sell stolen trucks, in violation of 18 U.S.C. § 371 (1988).  Jack Cobb was also indicted for possession with intent to sell, and interstate transportation of stolen trucks and trailers, in violation of 18 U.S.C. §§ 2321 and 2312 (1988).  The jury found both Jack and John Cobb guilty of conspiracy.[1]  The jury also found Jack Cobb guilty of interstate transportation, but not guilty of possession with intent to sell.

# II
## A

Both Jack Cobb and John Cobb argue that the district court erred in accepting the prosecutor's explanations for striking Virginia Majones and Lula Collins))the only African-Americans on

---

[1] Evidence at trial showed that Jack Cobb had paid several individuals to steal trucks and deliver them to him.  Evidence also showed that John Cobb delivered money to one of these individuals as payment for a stolen truck.

the jury panel. The prosecutor exercised peremptory strikes against both women, and Jack Cobb and John Cobb objected, arguing that strikes against the only two African-American veniremen raised an inference that the strikes were racially motivated. The district court called on the prosecutor to provide a race-neutral explanation for the strikes, and the prosecutor explained that both Majones and Collins were struck because they were elderly. He also stated that Collins did not seem alert during voir dire, and that Majones' spouse was employed at a hotel which was a known house of prostitution. On the basis of these explanations, the district court overruled the Cobbs' challenge to the peremptory strikes.

The Equal Protection Clause[2] forbids a prosecutor to exercise peremptory challenges against prospective jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986). Where the facts at voir dire raise an inference that the prosecutor's peremptory strikes were racially motivated, the prosecutor has the burden of showing that the strikes were based on "permissible racially neutral selection criteria." *See id*. at 94, 106 S. Ct. at 1721. Once the prosecutor offers a racially neutral explanation, the district court must determine whether the reasons offered by the prosecutor))or race alone))motivated the strikes. *See id*. at 98, 106 S. Ct. at 1724.

---

[2] The Equal Protection Clause of the Fourteenth Amendment pertains to the states, but *Batson* applies to federal, as well as state, criminal cases. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) (federal criminal conviction reversed on the basis of *Batson*).

The district court's determination is purely factual, and largely turns on an evaluation of the prosecutor's credibility. *Hernandez v. New York*, ___ U.S. ___, 111 S. Ct. 1859, 1869, 114 L. Ed. 2d 395 (1991). We review the district court's finding concerning the presence *vel non* of purposeful discrimination under the "clearly erroneous" standard. *See Hernandez* , 111 S. Ct. at 1871; *United States v. Terrazas-Carrasco*, 861 F.2d 93, 94 (5th Cir. 1988). We will not find a district court's ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed. *United States v. Mitchell*, 964 F.2d 454, 457-58 (5th Cir. 1992).

The district court believed the prosecutor's explanations after observing the demeanor of the prosecutor and the veniremen. However, John Cobb and Jack Cobb argue that the prosecutor's explanation that both Collins and Majones were elderly was not credible. They point out that several white veniremen were elderly, but were not struck by the prosecutor. This argument overlooks the differences between Majones and Collins and the other elderly panel members. The prosecutor noted that Collins, in addition to being elderly, was not alert during voir dire, but he made no such observation about the other elderly veniremen. Furthermore, the prosecutor was concerned not only about Majones' age, but also about her spouse's employment at a known house of prostitution.[3] Consequently, the mere fact that the prosecutor

---

[3] Jack and John Cobb attack the credibility of the prosecutor's explanation for striking Majones, on the grounds that no evidence in the record indicates that her spouse was employed at

4

declined to strike several elderly white veniremen does not persuade us to disturb the district court's credibility judgment. *See Hernandez*, 111 S. Ct. at 1869 ("[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies `peculiarly within a trial judge's province.'" (citation omitted)). We find no clear error in the district court's decision to accept the prosecutor's racially neutral explanations.

**B**

Jack Cobb contends that the district court erred in holding that a warrantless search of his business was authorized by a Texas statute permitting warrantless searches of automobile salvage dealerships.[4] Without obtaining a search warrant, Fort Worth police officer Ernest Pate and several other officers searched Cobb's business premises and seized two stolen truck engines and a stolen trailer. The officers believed that Article 6687-2

---

a house of prostitution. We agree that there is no evidence to that effect. However, the Cobbs point to no authority for the proposition that we should uphold the district court's credibility assessment only if it is supported by evidence in the record, and we decline to adopt such a requirement here. *See Hernandez*, 111 S. Ct. at 1869 ("There will seldom be much evidence bearing on [the] issue [whether the prosecutor's explanation should be believed], and the best evidence often will be the demeanor of the attorney who exercises the challenge." (citation omitted)). The district court determined, after observing the prosecutor's demeanor, that his explanation was credible; and the absence of record evidence to support the facts underlying that explanation does not leave us with the definite and firm conviction that a mistake has been committed. *See Mitchell*, 964 F.2d at 457-58.

[4] *See* Tex. Rev. Civ. Stat. Ann. art. 6687-2(i) (West Supp. 1992) ("A motor vehicle salvage dealer . . . shall allow and shall not interfere with a full and complete inspection by a peace officer of the inventory [and] premises . . . of the dealer.")

5

authorized the warrantless search. Cobb filed a pretrial motion to suppress all evidence seized in the course of the search, arguing that his business was not a salvage dealership for the purposes of Article 6687-2,[5] and that the warrantless search was therefore unauthorized and in violation of the Fourth Amendment. The district court held that Cobb was a motor vehicle salvage dealer for the purposes of Article 6687-2, and overruled Cobb's motion to suppress. *See* Record on Appeal, vol. 5, at 71.

We review the district court's finding of fact))that Cobb was a motor vehicle salvage dealer, as defined in Article 6687-2))for clear error. *See Hernandez*, 111 S. Ct. at 1869 ("[W]e have held that the [clearly erroneous] standard should apply to review of findings in criminal cases on issues other than guilt." (citations omitted)). The district court's finding was not clearly erroneous, as it was amply supported by the evidence. At the hearing on the motion to suppress, Officer Pate testified that Cobb's employees at the site repaired and rebuilt large trucks, using parts obtained "from salvage yards, from individuals, [and] from trucks that they had wrecked themselves." *See* Record on Appeal, vol. 5, at 10. Officer Pate also testified that Cobb's business sold parts to another trucking company, *see id.* at 33, and that Cobb's employees cut up metal at the Haltom City yard and sold it for scrap. *See*

---

[5] *See* Tex. Rev. Civ. Stat. Ann. art. 6687-2(a) (West Supp. 1992) (A "motor vehicle salvage dealer" is an individual or organization "engaged in the business of obtaining abandoned, wrecked, or junked motor vehicles or motor vehicle parts for scrap disposal, resale, repairing, rebuilding, demolition, or other form of salvage.").

*id.* at 46. From Officer Pate's testimony it appears that the activities at Cobb's truck yard precisely fit the statutory definition of a motor vehicle salvage dealer.[6]

Cobb also challenges the district court's interpretation of Article 6687-2(a).[7] Because Cobb conducted the activities set out in the statutory definition of a motor vehicle salvage dealer, the district court concluded that Cobb was "engaged in the business" of motor vehicle salvage. Cobb argues that one is not "engaged in the business of" motor vehicle salvage unless salvage is one's primary business, and since Cobb was primarily in the business of trucking, he was not "engaged in the business" of salvage. *See* Brief for Jack R. Cobb at 12 ("Mr. Cobb did not have a business *devoted to* `obtaining abandoned, wrecked, or junked motor vehicles or motor vehicle parts for scrap disposal, resale, repairing, rebuilding, demolition, or other form of salvage.' Appellant Jack Cobb was engaged in the enterprise of trucking . . . ." (emphasis supplied)).

The district court was obligated to interpret this Texas statute as a Texas court would have interpreted it. *See Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir. 1980), *cert. denied*, 449 U.S. 952, 101 S. Ct. 356, 66 L. Ed. 2d 216 (1980) (Where Mississippi statute did not provide damages for retaliatory firing, this Court had to "decide [the] issue as we believe a Mississippi court would decide it." (citation omitted)). We

---

[6] *See supra* note 5.

[7] *See id.*

review the district court's interpretation of the statute *de novo*. *See Salve Regina College v. Russell*, ___ U.S. ___, 111 S. Ct. 1217, 1221, 113 L. Ed. 2d 190 (1991) ("We conclude that a court of appeals should review *de novo* a district court's determination of state law."). We find no error.

There is no reason to believe that Texas courts would have interpreted Article 6687-2 to apply only to persons who are *primarily* in the salvage business. The statute does not say "primarily engaged in the business,"[8] and neither the Texas Court of Criminal Appeals nor any Texas Court of Appeals has interpreted Article 6687-2 to include such a limitation. Furthermore, limiting the scope of Article 6687-2 to persons *primarily* engaged in the salvage business would bear no logical relationship to what we perceive to be the obvious purpose of that statute))to aid in the prevention of motor vehicle theft. Consequently, we find no error in the district court's decision to apply Article 6687-2 to Cobb's business, even though Cobb was primarily engaged in trucking, and only incidentally engaged in motor vehicle salvage.

### C

John Cobb argues that the district court should have dismissed the indictment against him with prejudice. John Cobb filed a motion to dismiss his original indictment pursuant to the Speedy Trial Act, 18 U.S.C. § 3162 (1988), alleging that the government

---

[8] *See id.*

had failed to bring him to trial within the required time period.[9] The district court granted Cobb's motion, and dismissed the indictment without prejudice.[10]

We review the district court's ruling for abuse of discretion. *See United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987), *cert. denied*, 487 U.S. 1218, 108 S. Ct. 2870, 101 L. Ed. 2d 906 (1988) (district court's dismissal of indictment without prejudice, pursuant to the Speedy Trial Act, reviewed for abuse of discretion). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Taylor*, 487 U.S. 326, 333, 108 S. Ct. 2413, 2420, 101 L. Ed. 2d 297 (1988) (explaining the abuse of discretion standard to be applied by a court of appeals reviewing a district court's decision to dismiss, with or without prejudice, pursuant to the Speedy Trial Act).

---

[9] "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date . . . of the information or indictment . . . ." 18 U.S.C. § 3161(c) (1988). "If a defendant is not brought to trial within the time limit required by section 3161(c) . . . the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (1988).

[10] "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2) (1988).

We find no abuse of discretion here. Cobb does not attack the findings of fact upon which the district court based its ruling; and the district court considered all of the statutory factors[11] and articulated its reasoning with respect to each one. The district court noted that the offense charged was a serious one, which extended across state lines and lasted two and one-half years. *See* Record on Appeal, vol. 2, at 77-78. The district court also considered that the government had not sought the delay in prosecuting Cobb or used it for any ulterior purpose, and that Cobb had failed to press his right to a speedy trial before the court. *See id.* at 78. Finally, the district court pointed out that reprosecution was most beneficial to the administration of justice, because Cobb had suffered no prejudice as a result of the delay, and the government had gained no advantage. *See id.* In light of *United States v. Taylor*, we hesitate to disturb the district court's balancing of these factors.

Nonetheless Cobb argues that we should overturn the district court's ruling, because the government's negligence in failing to afford him a speedy trial required dismissal with prejudice. *See* Brief for John Cobb at 13. Because *United States v. Russo*, 741 F.2d 1264 (11th Cir. 1984), upon which Cobb relies, is distinguishable, we disagree. In *Russo* the Eleventh Circuit found an abuse of discretion in the district court's dismissal without prejudice, because there was no affirmative justification for the delay in bringing Russo to trial: the only cause for the delay was

---

[11] *See supra* note 10.

10

the government's negligence.  *Russo*, 741 F.2d at 1267.  That is not the case here.

Assuming arguendo that the government was negligent,[12] any such negligence was not the only reason for the delay in trying John Cobb.  Another contributing factor was Jack Cobb's plea agreement. Jack Cobb entered a plea of guilty in return for the dismissal of the charges against John Cobb, but six months later he withdrew his guilty plea.  *See* Record on Appeal, vol. 2, at 75.  Naturally this series of events contributed to the delay of John Cobb's case. Furthermore, the district court found that John Cobb acquiesced in the delay resulting from Jack Cobb's plea agreement, rather than demanding a speedy trial.  *See id*. at 78.  Because factors other than the government's alleged negligence contributed to the Speedy Trial Act violation, *Russo* is distinguishable, and we find no abuse of discretion in the district court's dismissal without prejudice of the indictment against John Cobb.

**D**

John Cobb also contends that the district court erred in refusing to sever his case from that of Jack Cobb.  John Cobb filed a motion for severance, pursuant to Fed. R. Crim. P. 14, claiming that Jack Cobb would testify on his behalf if the two prosecutions

---

[12] The district court found that the delay in prosecuting John Cobb was partially attributable to the government's misunderstanding of the Speedy Trial Act.  *See* Record on Appeal, vol. 2, at 77-78.  However, the district court's finding did not amount to a determination that the government had been negligent. *See id*.

11

were severed.  The district court denied the motion, and John Cobb appeals.

We review the district court's denial of the motion to sever for abuse of discretion.  *See United States v. Featherson*, 949 F.2d 770, 773 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1771, 118 L. Ed. 2d 430 (1992).  In order to show that the district court abused its discretion, Cobb must show that his "trial was unfair and exposed [him] to compelling prejudice against which the district court was unable to afford protection."  *See United States v. Kane*, 887 F.2d 568, 571 (5th Cir. 1989), *cert. denied*, 493 U.S. 1090, 110 S. Ct. 1159, 107 L. Ed. 2d 1062 (1990).  To prove that his trial was unfair because he was denied the testimony of Jack Cobb, John Cobb must show that Jack Cobb would, in fact, have testified.  *See id.* at 573 (defendant was not entitled to severance on account of co-defendant testimony, unless he established that the co-defendant would actually testify).

John Cobb has not made that showing.  His motion for severance was not accompanied by an affidavit from Jack Cobb indicating that he would testify if the severance were granted.[13]  Consequently, there was no support for the claim that Jack Cobb would testify on John Cobb's behalf, and the district court did not abuse its discretion by denying the motion for severance.  *See United States*

---

[13]  *Abbot v. Wainwright*, upon which Cobb relies, is distinguishable in this regard.  In that case we reversed the district court's denial of a motion for severance, where the motion was accompanied by an affidavit showing that the co-defendant would in fact testify if severance were granted.  *See Abbott v. Wainwright*, 616 F.2d 889, 889-90 (5th Cir. 1980).

*v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987), *cert. denied*, 484 U.S. 913, 108 S. Ct. 259, 98 L. Ed. 2d 216 (1987) (district court did not abuse its discretion in denying motion for severance which was accompanied by the affidavit of the movant's counsel, but not by an affidavit of the co-defendant who was expected to testify).

## III

For the foregoing reasons, we AFFIRM.