United States Court of Appeals,

Fifth Circuit.

No. 95-30055.

UNITED STATES of America, Plaintiff-Appellee,

v.

David Kenneth PLACENTE, Defendant-Appellant.

April 26, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, WIENER and STEWART, Circuit Judges.

STEWART, Circuit Judge:

David Kenneth Placente appeals the district court's denial of his motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. Placente claims that he received ineffective assistance of counsel. His pretrial attorney, Bernard McLaughlin, allegedly operated under an actual conflict of interest in representing both him and his nephew, Robert Braun; and this conflict adversely affected counsel's performance. Placente specifically alleges that in the course of the criminal proceedings against him, McLaughlin acquired certain confidential information from him and used it to Braun's benefit and his own detriment. The issue is raised for the first time on appeal. For the following reasons we now affirm the district court's denial of the motion.

FACTS

On February 11, 1987, a grand jury charged Placente and fourteen other defendants in a five-count indictment in connection with the importation and distribution of marijuana. One of the

1

defendants was Placente's nephew, Robert Braun.  The trial court appointed Glen Vamvoras to represent Placente.  Braun retained Bernard McLaughlin to represent him.  Placente wished to consult other counsel, and Braun suggested he contact McLaughlin for assistance.[1]

Vamvoras advised against Placente's seeing McLaughlin and requested a hearing before the magistrate judge.  At that hearing, Placente explained that he wished to speak with McLaughlin "[n]ot as a personal attorney, as a fact finding, as he has far more resources I believe than the public defender's office has, far more resources as far as fact finding litigations [sic]."  The district court was concerned whether McLaughlin could fairly represent both Placente and Braun:

> If Mr. McLaughlin is acting as your [Placente's] attorney, he would be duty-bound to look out for your interest....  If he is not employed as your attorney, but he is employed as Mr. Braun's attorney, his only obligation at this time is to do what is best for Mr. Braun, not for what is best for you, I can tell you.

Vamvoras ultimately consented to McLaughlin visiting Placente in jail.  According to McLaughlin's records, he and Placente met on March 4, 1988, for three hours;  on March 17 for three and one-half hours;  on April 26 for forty-eight minutes;  and on April 27 for one and one-half hours.  In addition to the interviews with

---

[1]According to Braun, Placente retained McLaughlin "in his professional capacity as counsel for Placente."  Braun swore he saw Placente sign a representation agreement for McLaughlin authorizing McLaughlin to work on Placente's case.  He also swore that he was present when Placente told Vamvoras he no longer wanted him as his lawyer and that Bernard McLaughlin had agreed to help him with his defense.  The alleged representation agreement has not been produced.

Placente and Braun, McLaughlin requested and received from Placente's girlfriend all of Placente's phone books. McLaughlin did not represent Placente at trial, nor did he ever file any motions on Placente's behalf.

On April 11, 1988, pursuant to a motion to substitute counsel, Vamvoras was permitted to withdraw as counsel of record and replaced by C. Frank Holthaus. On April 28 the trial court ordered that Vamvoras be allowed to enroll as co-counsel with Holthaus. Together, Holthaus and Vamvoras represented Placente at trial and at sentencing. The district court noted that although McLaughlin was never enlisted as Placente's attorney of record he nevertheless assumed a significant role in Placente's defense. The court acknowledged there to be a prima facie showing of representation by McLaughlin, and the government conceded the same.

All the defendants, except Placente and Robert Hagmann, pleaded guilty. Braun entered into a plea agreement to "fully cooperate" with the Government. Placente and Hagmann went to trial on May 2, 1988; and both were found guilty of all five counts. Placente was sentenced to imprisonment plus a fine. He did not testify during the trial.

On July 22, 1994, Placente filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel due to a conflict of interest. Placente alleged in his motion that McLaughlin, in order to obtain a better deal for Braun, divulged to the government confidential information related during their meetings. Placente said that he

3

first learned the Government had this information during his trial when the prosecution showed him a report titled, "Information to Aid U.S. Attorney's Office ... Regarding the "Choupique Marijuana Bust." The report's heading indicated that it was prepared by McLaughlin on behalf of Braun. Placente claimed that in the face of the information contained in the government's memorandum, he dared not testify in his own defense. Furthermore, he argued that the report compromised his coercion defense. Among its responses, the Government contended that Placente voluntarily provided the information to McLaughlin for the purpose of aiding his nephew. The district court denied the motion, and Placente comes now seeking relief.

DISCUSSION

Following a district court's denial of a § 2255 motion, we review the district court's factual findings for clear error and questions of law de novo. *United States v. Seyfert,* 67 F.3d 544, 546 (5th Cir.1995). A defendant's claim that he received ineffective assistance of counsel is a mixed question of law and fact and is also reviewed de novo. *United States v. Faubion,* 19 F.3d 226, 228 (5th Cir.1994).

*Threshold Issues*

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence;

4

or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see United States v. Cates,* 952 F.2d 149, 151 (5th Cir.), *cert. denied,* 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. *Cates,* 952 F.2d at 151.

A defendant who has been convicted and has exhausted or waived his right to appeal is presumed to have been fairly and finally convicted. *United States v. Shaid,* 937 F.2d 228, 231-32 (5th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). "[A] collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). Therefore, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors. *Id.* at 168, 102 S.Ct. at 1594. Ineffective assistance of counsel is cause for a procedural default. *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

*Actual Conflict*

Ruling en banc, in *Beets v. Scott,* 65 F.3d 1258, 1268-71 (5th Cir.1995) (en banc), we declared that the standard for judging ineffective assistance allegations in the context of multiple client representation is that laid out by the Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Placente must "establish that an actual conflict of

interest adversely affected his lawyers's performance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. If he does, then prejudice to him must be presumed. *Perillo v. Johnson,* --- F.3d ----, ----, No. 94-20759, 1996 WL 125024, at *6 (5th Cir. Mar. 21, 1996). *Beets* characterized this standard as a "not quite per se rule of prejudice." *Beets,* 65 F.3d at 1269.

"A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter,* 769 F.2d 258, 263 (5th Cir.1985). "An actual conflict exists if "counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.' " *United States v. Lyons,* 703 F.2d 815, 820 (5th Cir.1983). "Joint representation does not necessarily create a conflict of interest." *United States v. Rico,* 51 F.3d 495, 508 (5th Cir.1995). However, "[w]here an attorney obtains confidential information helpful to one defendant but harmful to another, a conflict of interest may exist." *Parker v. Parratt,* 662 F.2d 479, 484 (8th Cir.1981), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 91 (1982) (citing *United States v. Burroughs,* 650 F.2d 595, 598 and n. 4 (5th Cir.1981), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981)).

Placente claims for the first time on appeal that an actual conflict existed in this case because by representing both him and his nephew McLaughlin jeopardized his defense of coercion. Because he did not raise an objection at trial, Placente must show that an

6

actual conflict of interest affected McLaughlin's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980).

The district court found that there was no actual conflict between Placente and Braun because Placente had voluntarily provided the information to McLaughlin in an effort to aid his nephew's defense: "This court has a difficult time imagining how the defendant's information could have aided Braun without disclosure to the government."

Placente acknowledged that he voluntarily provided McLaughlin information to aid his nephew's defense, but he did not authorize McLaughlin to give this information to the government. He says it was to be used, if at all, for Braun and his mutual benefit. Placente's defense theory was that John David McKibbin, one of the lead conspirators, compelled him to remain a member of the conspiracy through threats. According to Placente, the information in the memorandum was "far more inculpatory and descriptive for [sic] other individuals than Appellant, yet it still carried the connotation that Appellant was a part of those operations because he knew and provided the information and was named therein." We find Placente's argument unpersuasive. He fails to demonstrate an actual conflict.

For there to be an actual conflict, there must be an attorney and client relationship to be compromised. Placente contends that McLaughlin was his attorney, unequivocally, and so was obligated to promote his interests. Dereliction of this responsibility created

7

the actual conflict of which Placente now complains. In response, at oral argument, the government attempted to qualify the scope of McLaughlin's representation of Placente as "very narrow," not so extensive as to compel the usual protections reserved to attorney-client situations. Supporting this argument is the fact that at no time was McLaughlin ever identified as the counsel of record for Placente.

Even accepting Placente's argument as to the scope of McLaughlin's representation, there is still no showing of an actual conflict to justify Placente's ineffective assistance claim.

*The Memorandum*

Placente also fails to establish that the information in the report provided to the government by McLaughlin came from his conversations with McLaughlin. The government contends that it already possessed most of that information, much of it obtained through plea negotiations with Placente himself. Placente does not contradict the government's explanation. His strongest evidence is an affidavit from his trial counsel, Holthaus, who swears that "it was and is [his] strong impression that Placente believed that the information came from McLaughlin." Because Holthaus and Placente considered the information in the government's memorandum to be highly incriminating, they decided not to allow Placente to testify.

However, the information in the memorandum itself is not so inculpatory as to undermine a coercion defense. It, in fact, contains the allegation that Placente feared harm from McKibbin if

8

he withdrew from the operation, exactly his purported defense theory. The memorandum related Placente's role as that of "radioman." He set up radio equipment at the radio outpost in Columbia and on the vessel. Placente regularly is reported to be taking orders from McKibbin and occasionally traveling with him, every time in relation to delivering or setting up radio equipment. Paragraph 14 reads, "Placente sent to Columbia to fix radio again; watches fuel, food, bales put on boat; gets scared; almost arrested at army checkpoints; wants to get out but afraid he will be killed." The fact that Placente appears to play a prevalent role in the conspiracy does not dismiss his coercion contention.

Furthermore, review of the trial transcript shows that he did argue his coercion theory at trial. In closing arguments Holthaus presented the theory that Placente had been threatened and acted out of fear. Thus, there was evidence and argument presented of McKibbin's alleged propensity toward violence and of Placente's being threatened to engage in the conspiracy.

*Adverse Effect*

Even if Placente were able to establish an actual conflict, he fails to show an adverse effect justifying reversal. Placente says the "critical issue for purposes of gaging the adverse effect of a conflict of interest is whether the counsel's decision-making regarding one client was unfettered by the effect of that decision on his other client." He says that the disclosure of the information in the memorandum compromised his defense in that he felt he could no longer testify. Still he does not give enough

9

detail as to exactly what his testimony would have been and the difference it could have made to prove an adverse effect worthy of reversal.

Placente's arguments are unconvincing. They do not make a clear case that McLaughlin operated under an actual conflict. There is no indication that McLaughlin curtailed any activities on behalf of Placente in order to prevent detrimental effects to Braun's case.

*Waiver*

The Sixth Amendment's right to counsel includes the right to conflict-free counsel. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). For a waiver of a defendant's right to conflict-free counsel to be effective, the record must show that the trial court determined that it was done knowingly, intelligently, and voluntarily. *United States v. Greig,* 967 F.2d 1018, 1021 (5th Cir.1992).[2] Essentially, trial courts in

---

[2]The formal procedure for ascertaining the effectiveness of a defendant's waiver of conflict-free counsel was spelled out in *United States v. Garcia,* 517 F.2d 272, 277-78 (5th Cir.1975):

> As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

10

this circuit are to conduct a hearing to ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel. *Greig,* 967 F.2d at 1022.

The Government argues that Placente waived his right to conflict-free counsel by insisting on speaking with McLaughlin. Placente responds that the March 2, 1988, hearing in which Placente expressed an interest in securing McLaughlin's services did not satisfy the requirements of *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975), for establishing the existence of a conflict.

We find no actual conflict justifying Placente's ineffective assistance claim. Moreover, the trial judge warned Placente that McLaughlin, even if he agreed to meet with him, would retain his obligation to pursue Braun's best interests. Placente responded that he was fully aware of McLaughlin's role with respect to his nephew; and he, nevertheless, wished to speak with him. Under the circumstances, no *Garcia* hearing was necessary.

We find no actual conflict and, therefore, affirm the district court's denial of Placente's ineffective assistance of counsel claim.

AFFIRMED.