**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-50910
_____

United States of America

                                                      Plaintiff-Appellee,

v.

Bruce Marlin Chavez

                                                      Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

November 2, 1999

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:


## I.  FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Bruce Marlin Chavez, was convicted on charges relating to his involvement in a

cocaine distribution operation.  Chavez previously brought a direct appeal of his conviction,

alleging, *inter alia*, that the prosecutor improperly commented on his post-arrest silence during

cross-examination and closing, in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976).  This court

found that the prosecutor did, in fact, commit a *Doyle* violation.  However, because Chavez's

1

counsel failed to object at trial, this court reviewed for plain error and determined that, given the evidence adduced at trial, the error was not so substantial or prejudicial that Chavez's trial lacked the fundamental elements of justice.

Chavez subsequently filed a motion to vacate pursuant to 28 U.S.C. § 2255. Chavez alleged that his counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel. The matter was referred to a magistrate judge who, after conducting a hearing, recommended that the motion to vacate be denied. The district court reviewed the matter and denied the motion. Chavez now seeks relief in this court. As Chavez filed his motion before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, he does not need a certificate of appealability to appeal.

In November 1991, Juan Cardenas contacted the Drug Enforcement Agency (DEA) in El Paso, Texas, agreeing to become a confidential informant. As a result, the DEA began an investigation of his half-brother, Ramon Abel Cardenas-Hernandez, and others with whom Juan Cardenas had been admittedly involved in drug trafficking.

Chavez's purported involvement in this matter arose out of the use of his house, located at 3460 Slocum, as a "stash" house for the trafficking operation. For approximately eighteen months, Chavez allowed a long-time acquaintance, Jose Humberto Garcia, to stay with him at the Slocum residence. Garcia was a key participant in the drug operation.

An undercover DEA agent, Sal Martinez, testified that in July 1992, he went to the Slocum residence with Juan Cardenas and another participant, Jorge Bermudez-Casas, to pick up a suitcase containing 24 kilograms of cocaine. The suitcase had a luggage tag bearing Chavez's name and address. Martinez later returned the suitcase to Chavez, and at that point, engaged him

2

in a conversation which indicated that Chavez was aware of the drug activities. Chavez replied, "Oh, shit," when told the suitcase had borne a name tag with his name on it. In addition, upon questioning by Martinez, Chavez indicated that he could obtain additional cocaine for sale. He also demonstrated familiarity with another stash house and its owner, and when Martinez indicated the grass at the other house was getting high and might look suspicious, Chavez informed Martinez that someone would take care of it. Martinez asked if it would be "Guero," referring to Bermudez-Casas, to which Chavez responded in the affirmative.

Dennis Haught, Garcia's brother-in-law and a participant in the drug operations, testified that Chavez was aware of the drug activities in the house. Haught testified that at some point in October 1992, he and Bermudez-Casas went to Chavez's house to load cocaine in a secret compartment in a car being used to transport the cocaine. Haught and Bermudez-Casas had difficulty with the secret compartment and asked Chavez to purchase glue to hold the carpet down. Chavez left and returned with some cement which did not work. According to Haught, Chavez then permitted Haught and Bermudez-Casas to store the cocaine in his garage. On October 28, 1992, DEA agents conducted a consensual search of Chavez's house and seized 28 kilograms of cocaine.

Chavez testified on his own behalf at trial. He denied any knowledge of the drug trafficking activities and stated that he had become suspicious of Garcia and had asked him to move out on a number of occasions, beginning in May or June of 1992. With respect to the suitcase, and that it had been full of cocaine, Chavez stated that the suitcase did not belong to him, but to Garcia, and that Garcia had lent it to him earlier. When questioned about his conversation with Martinez, Chavez testified that he "went along" and participated in the

3

conversation "playing detective" because of his suspicions about Garcia. He stated that he discussed the situation with is then-girlfriend, now wife, Karrie Dillard Chavez, and they discussed calling the police. Mrs. Chavez corroborated this testimony. Mrs. Chavez further testified that she had encouraged Chavez to ask Garcia to move out, and that her husband did not want Haught in the house. In addition, two of Chavez's co-workers testified that Chavez had expressed concern about Garcia, and related the suitcase incident to them. As for Haught's use of Chavez's garage when trying to fill the secret compartment of his car, Chavez testified that Garcia had asked him if Haught could use his driveway to work on his brakes.

At the time of his arrest, Chavez did not relate to the arresting officers what he testified to at trial. Instead, Chavez only commented by asking why he was being arrested and denying any knowledge of narcotics trafficking.

At trial, the prosecutor made the following remarks during cross-examination of Chavez:

Prosecutor:    Now, after you were arrested, Mr. Chavez – Well, the story that you've told today, this is the first time you've told the story, is that correct, other than maybe your attorneys?

Chavez:    Yes, sir.

Prosecutor:    All right. You saw [DEA agent] Martinez the night you were arrested, is that right?

Chavez:    Yes, sir.

Prosecutor:    Did you recognize him?

Chavez:    Yeah, I think I did.

Prosecutor:    Did you say anything to him concerning this conversation? Did he talk to you about this conversation?

Chavez:    Yes, he did.

4

Prosecutor: And did you remember the conversation at that time?

He told me something about –

The Court: His question was, did you remember the conversation at that time?

Chavez: No.

In addition, the prosecutor stated the following during closing argument:

Finally, ladies and gentlemen, when you look at everything in this case, consider when he was arrested, . . . none of this, none of what you heard from the witness stand ever got told to the police that day. None of that explanation, because it didn't happen. You look at the law, you look at the evidence and you look at common sense. These two guys are guilty. It's your duty to find them guilty.

As already discussed, a panel of this court determined that these comments violated *Doyle*, but that under the plain error standard, Chavez's trial did not lack the fundamental elements of justice. Now, Chavez argues that his counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel.

## II. STANDARD OF REVIEW

In reviewing a district court's denial of a motion to vacate sentence under 28 U.S.C.A. § 2255, this court reviews questions of fact for clear error and questions of law *de novo*. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). A defendant's claim that he received ineffective assistance of counsel is a mixed question of law and fact to be reviewed *de novo*. *Id*.

## III. DISCUSSION

In order to prevail on an ineffective assistance of counsel claim, a defendant must show (1)

that counsel's assistance was deficient, and (2) that the deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the prejudice prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A failure to establish either deficient performance or resulting prejudice defeats the claim. *See Strickland*, 466 U.S. at 697.

The district court found, and the Government essentially concedes that, counsel's failure to object to the *Doyle* error constituted a deficiency, thereby satisfying the first prong of *Strickland*. The focus, then is on the second prong - whether prejudice resulted.

Chavez raises, as a threshold question, the burden of proof. In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994). Chavez argues, however, that when the Government benefits from a constitutional error, as in this case, the Government has the burden of demonstrating that the error did not contribute to the verdict. In essence, Chavez invokes the "harmless error" standard of review enunciated by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 24 (1967), which requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

Chavez's argument is flawed, however, as it ignores the distinction between direct and collateral review. On review of a habeas petition, as opposed to a direct appeal, courts do not apply the "harmless error" standard enunciated in *Chapman*; rather, courts apply the standard of *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), reviewing the record to determine whether the

6

alleged error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. A *Doyle* violation is the type of trial error subject to this type of review.

The district court analyzed the *Doyle* violation under the *Brecht* standard, finding that the prosecutor's comments were not so significant or injurious that they clearly swayed the jury's verdict. The question of whether the *Doyle* violation was error under *Brecht* and the question of whether counsel's failure to object prejudiced Chavez invoke similar, if not identical, standards. Thus, Chavez did not demonstrate prejudice under *Strickland*.

Chavez contends that the comments on his post-arrest silence took away his only defense - his credibility - undermining his testimony that he had no involvement in the drug operation. He argues that because defense counsel failed to object to prosecutor's comments, the jury was invited to consider why Chavez did not tell the same story after his arrest as he did on the stand, which is the very evil that *Doyle* sought to avoid.

*Doyle* violations often result in reversal, premised as they are on the constitutional right to silence. *See*, *e.g.*, *United States v. Edwards*, 576 F.2d 1152, 1155 (5th Cir. 1978) (noting that circumstances under which a comment on the defendant's silence will not result in reversal are "few and discrete"). Thus, counsel's failure to object certainly diminished Chavez's possibility of reversal on direct appeal.

However, the focus here is whether a reasonable probability exists that counsel's deficient performance affected the outcome and denied Chavez a fair trial. The evidence against Chavez

7

was significant.[1]  His conversation with undercover agent Martinez demonstrated Chavez's familiarity with the other stash house and other participants, as well as his willingness to participate in further transactions.  *See United States v. Morales*, 854 F.2d 61, 63 (5th Cir. 1988) (rejecting as implausible defendant's contention that he was conducting his own undercover operation when he met with an undercover agent and informer to set up a drug smuggling operation).  The evidence showed that Chavez was present when  Haught attempted to conceal cocaine in an automobile.  Garcia resided with Chavez for eighteen months, making it implausible that Chavez was utterly unaware or involved in the activities.   Moreover, as the district court noted, the jury did not give wholesale credence to the prosecutor, as it acquitted Chavez of Count III, possession with intent to distribute cocaine on July 30, 1992, which is the date that  Martinez and  Bermudez-Casas collected the suitcase from Chavez's residence.   Therefore, it is very unlikely that the outcome of the trial would have been different absent the *Doyle* error.

Chavez also contends that a new trial is required because the magistrate judge exhibited grave doubt as to whether the *Doyle* violation tainted his trial, citing *O'Neal v. McAninch*, 513 U.S. 432 (1995), in which the Supreme court stated that whenever a federal judge is in grave doubt about whether a trial error had substantial and injurious effect in determining the jury's

---

[1]  As found by this Court on direct appeal: "The evidence at trial showed that Chavez's house was used as a 'stash house.'  In July 1992, Juan, DEA agent Martinez, and Bermudez-Casas went to Chavez's house to pick up a suitcase with 24 kilograms of cocaine.  The suitcase had a luggage tag with Chavez's name and address.  In October 1992, Haught and Bermudez-Casas went to Chavez's house to load cocaine, which they had picked up from Leon-Enriquez, in a secret compartment in the Volkswagon being used to transport the cocaine.  Because Haught and Bermudez-Casas had difficulty with the secret compartment, Chavez purchased cement to glue the carpet down over the secret compartment.  Chavez then permitted them to store cocaine in his garage after they were unsuccessful in concealing it in the secret compartment.  During the consensual search of Chavez's house, DEA agents seized 28 kilograms of cocaine."

verdict, the error is not harmless and the defendant must win. Chavez points to numerous statements by the magistrate judge during the habeas hearing which he claims indicate the judge had "deep concern" for the harm. In particular, the prosecutor stated at the § 2255 hearing that considering the evidence before the jury, "there's nothing [he] could have said as a lawyer that would have affected their decision." The magistrate judge responded that if that were true, "why say anything?"

Chavez's argument on this point is unavailing. The magistrate judge eventually determined, after the habeas hearing and a review of the record, that Chavez was not prejudiced by his counsel's failure to object. Thus, any initial doubts the magistrate judge expressed were resolved following the hearing, and the district court concluded likewise. Accordingly, we AFFIRM the district court's decision.