# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2023

Lyle W. Cayce
Clerk

No. 21-30090

―――――――――

United States of America,

*Plaintiff—Appellee*,

*versus*

Larry Moore Alston, Jr.

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:19-CV-650

_____

Before Richman, *Chief Judge*, and Stewart and Douglas, *Circuit Judges*.

Per Curiam:[*]

Larry Moore Alston, Jr. filed this appeal challenging the district court's denial of his 28 U.S.C. § 2255 motion alleging that he was denied effective assistance of counsel in submitting his guilty plea. Because Alston has failed to show that his counsel's performance was deficient or prejudicial under *Strickland v. Washington*, 466 U.S. 668 (1984), we AFFIRM.

―――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-30090

## I. FACTUAL & PROCEDURAL BACKGROUND

Alston, federal prisoner # 19658-035, and a dozen co-defendants were indicted for conspiring to distribute and to possess a mixture and substance containing a detectable amount of cocaine and a mixture and substance containing a detectable amount of methamphetamine.[1] Relevant to this appeal, Alston pleaded guilty with the benefit of a plea agreement to the conspiracy count involving only the methamphetamine mixture.

At Alston's rearraignment hearing, a state trooper testified that he believed that the plea agreement offered to one of the co-defendants involved between 1.5 and 5 kilograms of a mixture containing methamphetamine.[2] Subsequent to the rearraignment hearing, however, the probation officer who prepared Alston's presentence report ("PSR") explained that "[t]he U.S. Attorney's Office and the Federal Bureau of Investigation indicated that the methamphetamine associated with . . . this case was of a high purity level and should be considered 'actual' methamphetamine for guideline purposes." The probation officer continued that, according to laboratory reports, the methamphetamine involved in the conspiracy ranged in purity "from 99.6% (+/- 3.7%) to 92.3% (+/- 3.6%)." Consequently, applying the 2016 edition of the Guidelines, the probation officer determined that Alston was accountable for 49 ounces of actual methamphetamine, 10 ounces of heroin, and 24 ounces of cocaine, which, taken together, were equivalent to 28,202.58 kilograms of marijuana. That drug quantity resulted in a base offense level of 34. Alston received no adjustment for acceptance of responsibility due to a post-guilty-plea arrest. Thus, his total offense level remained at 34. He

---

[1] Alston was also charged in the same indictment with use of a communication facility to facilitate a drug offense.

[2] The district court conducted Alston's rearraignment hearing simultaneously with the rearraignment hearings of two of his co-defendants.

No. 21-30090

received a total of 13 criminal history points which placed him in criminal history category VI.

Defense counsel submitted a sentencing memorandum, disputing the finding that Alston's offense involved actual methamphetamine instead of a methamphetamine mixture. He argued that the parties understood that Alston was pleading guilty to a conspiracy involving a "mixture" of methamphetamine rather than "actual" methamphetamine based on the state trooper's testimony at rearraignment. He explained that the laboratory reports cited in the PSR had not been presented or referred to at rearraignment and noted that Alston "would not have accepted, and [he] would not have advised [Alston] to enter into a plea agreement for actual methamphetamine." He also submitted written objections to the PSR raising a substantially similar argument.

At sentencing, defense counsel re-urged his objection and the district court overruled it, emphasizing that: (1) Alston denied at rearraignment that there was any side agreement apart from the plea agreement, (2) there was nothing in the record suggesting that there was an agreement as to the purity of the drugs, and (3) Alston had been sufficiently admonished and acknowledged at rearraignment that the ultimate sentence was up to the court.

The parties ultimately agreed that Alston was entitled to a two-point reduction in his criminal history score, but the district court mistakenly reduced his offense level, rather than his criminal history score, resulting in a total offense level of 32 and a criminal history category of VI, yielding a guidelines imprisonment range of 210 to 240 months. The district court then sentenced him within guidelines to 225 months of imprisonment, to be followed by five years of supervised release.

No. 21-30090

Alston appealed his sentence, arguing that his offense level should have been calculated based on a finding that the offense involved a mixture containing methamphetamine rather than actual methamphetamine. *United States v. Alston*, 720 F. App'x 219, 219 (5th Cir. 2018) (per curiam) (unpublished). A panel of this court rejected his argument and affirmed his sentence. *Id.* at 219–20.

Alston subsequently filed a pro se 28 U.S.C. § 2255 motion with the district court, asserting that he was denied effective assistance of counsel because in advising him to plead guilty, counsel incorrectly informed him of a guidelines range that was based on a mixture containing methamphetamine instead of actual methamphetamine. According to Alston, counsel told him that if he accepted the Government's plea offer, he would be facing a guidelines range of 120 to 150 months' imprisonment. He claimed that but for counsel's incorrect estimation of his guidelines range, he would not have pleaded guilty and would have insisted on going to trial.

The magistrate judge ("MJ") issued a report recommending that the § 2255 motion be denied. Relying primarily on *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994) and various district court cases, the MJ concluded that the district court's admonishments were sufficient and that counsel's failure to advise Alston of the correct guidelines range did not establish that his performance was deficient.

Through newly retained counsel, Alston objected to the MJ's report, attacking its reliance on *Thomas* and the district court cases, arguing that they were not controlling and were distinguishable. The district court determined that the MJ's findings and recommendations were correct and denied the § 2255 motion. It then denied Alston a certificate of appealability ("COA"). With the assistance of counsel, Alston moved this court for a COA. A judge

of this court subsequently granted a COA with respect to his ineffective assistance of counsel claim.

## II. STANDARD OF REVIEW

In an appeal from the denial of a § 2255 motion, this court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). Claims of ineffective assistance of counsel are reviewed de novo. *See United States v. Scott*, 11 F.4th 364, 368 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 827 (2022).

## III. DISCUSSION

"[A] prisoner who claims that his sentence violates federal law 'may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence'" under § 2255. *United States v. Kelley*, 40 F.4th 250, 251 (5th Cir. 2022) (citing 28 U.S.C. § 2255(a)). "Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citation omitted). A federal prisoner may move to vacate, set aside, or correct his sentence on four distinct grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citations omitted). "The scope of relief under § 2255 is consistent with that of the writ of habeas corpus." *Id.* (citation omitted). "[A] § 2255 motion is the preferred method for raising a claim of ineffective assistance of counsel." *United States v. Green*, 47 F.4th 279, 296 (5th Cir. 2022) (citations omitted).

No. 21-30090

A defendant has a constitutional right to "be advised and understand the consequences of a guilty plea." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *Id*. In other words, as long as a defendant understands "the length of time he might possibly receive, he was fully aware of his plea's consequences." *Id*. (citations omitted).

To establish ineffective assistance of counsel, a defendant must demonstrate that his attorney's performance was deficient, and that this substandard performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either deficient performance or prejudice defeats an ineffective assistance claim. *Id*. at 697. A claim that a plea was involuntary due to counsel's deficient performance encompasses the issue of whether counsel rendered ineffective assistance under *Strickland*. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687 (internal quotation marks and citation omitted). A defendant can show *Strickland* prejudice by establishing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "[I]t is not enough, under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693). "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

6

No. 21-30090

*A. Deficient Performance*

Alston contends that his attorney's performance was deficient because he misstated the potential exposure that he faced under the Guidelines if he accepted the guilty plea. He further takes issue with the fact that his attorney mistakenly believed he was pleading guilty to a "mixture" involving methamphetamine, rather than "actual" methamphetamine. He complains that if he was aware he would get nearly a maximum sentence by pleading guilty, he would not have pleaded guilty. His assertions, however, are belied by the record.

As an initial matter, Alston's written plea agreement provided in express terms that he understood and agreed that the maximum punishment on the count to which he pleaded guilty was "a term of imprisonment of not more than twenty (20) years." The written agreement further provided that "the sentencing judge alone [would] decide what sentence to impose" and that "[n]o other agreement, understanding, promise, or condition exist[ed]" or would be considered binding "unless it [was] committed to writing in an amendment attached to the [the plea agreement] and signed by [Alston]." Finally, the plea agreement provided just above Alston's signature that he affirmed that "absolutely no promises, agreements, understandings, or conditions [had] been made or entered into in connection with [his] decision to plead guilty except those set forth in [the] plea agreement."

Likewise, during Alston's rearraignment, the district court directly addressed him numerous times with regard to his maximum sentencing exposure. The court first asked "Mr. Alston, do you understand that the maximum possible penalty under Count 1 is a maximum of 20 years in prison, plus a fine of up to $1 million?" Alston replied, "Yes, sir." The court confirmed, "You understand that?" and Alston responded, "Zero to 20?" and the court answered, "Maximum 20." Alston replied again, "Oh, yes,

sir." The court repeated once again, "Maximum," and Alston answered, "Yes, sir." The court then explained that a PSR would be put together prior to sentencing that would be prepared by Probation and Pretrial Services and that counsel for both sides would be able to make recommendations as to Alston's sentence. The court then emphasized "Do you understand any recommendation of sentence by any attorney in the case, whether they agree or not, is not binding on the court, and you could receive a sentence more severe than that recommended by any attorney? Mr. Alston, do you understand?" and Alston confirmed "Yes, sir." The court went on to discuss the 18 U.S.C. § 3553(a) sentencing factors before stating "[a]ll of this is to say to you that your sentence is entirely up to me. It's not up to any lawyer, either from your side of the case or on the [G]overnment's side of the case. Do each of you understand what I've just told you? Mr. Alston?" Alston replied again, "Yes, sir."

Finally, at Alston's sentencing hearing, when counsel re-urged the argument regarding the methamphetamine mixture versus pure methamphetamine, the district court again clarified:

> While we're there, you know, let's go back to the time of the guilty plea. I make it a point during my colloquies to ask if there are any side agreements at all other than what's contained in the written plea agreement. And you said and the [G]overnment also said that there were no side agreements. Now, I understand that you maybe interpreted the word "mixture" to mean something amorphous other than, you know, high purity, but if there was an agreement about that, it should have been brought up then if you say there was an actual agreement. I haven't seen anything put in the record other than your suggestions that there was an agreement to anything. I also am very careful to ask, and did ask this defendant, if he was aware that the

No. 21-30090

> sentencing was entirely up to me. And I asked it a bunch of different ways, and everyone seemed to understand that that's the way that was . . . I wanted to make it clear for this proceeding that what was represented to the court previously was that there were no side agreements of any kind.

Alston's counsel agreed after the district court's statements above that there was no side agreement and Alston verbally confirmed the same. The district court then rendered Alston's sentence of 225 months with a 5-year term of supervised release.

As previously mentioned herein, a panel of this court affirmed Alston's sentence on direct appeal, rejecting his argument that his offense level should have been calculated based on a finding that the offense involved a mixture rather than actual methamphetamine. *Alston*, 720 F. App'x at 219–20. In so doing, the panel reasoned:

> Where a defendant pleads guilty to an offense involving a mixture or substance containing methamphetamine, the offense level [is] determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level. The presentence report's reliable, unrebutted findings as to the purity of the methamphetamine attributable to Alston, which were based on laboratory reports provided by the Government, were sufficient to support the court's offense level determination.

*Id*. at 219 (internal quotation marks and citations omitted); *see also United States v. Koss*, 812 F.3d 460, 469 (5th Cir. 2016) ("[I]nformation in the PSR [regarding drug composition] is presumed reliable, and [the defendant] bore the burden 'to demonstrate by competent rebuttal evidence that the information [was] materially untrue, inaccurate or unreliable.'" (citation

omitted)); *see also United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013) ("Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing . . . . [I]n the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." (citation omitted)).

Having been denied relief on direct appeal, Alston attempts to obtain relief through these collateral proceedings. Nevertheless, the applicable case law in this circuit does not favor his position. In *United States v. Valdez*, 973 F.3d 396, 401–02 (5th Cir. 2020), the defendant, Lauro Valdez, pleaded guilty after counsel allegedly advised him that his guidelines range was between 24 and 33 months' imprisonment. However, Valdez claimed that counsel failed to tell him about a cross reference provision of the Guidelines. *Id.* at 402. Following the application of the cross reference, the district court determined that Valdez's guidelines range was 324 to 405 months of imprisonment, although his ultimate sentence was capped at the statutory maximum of 120 months' imprisonment. *See id.* at 401–02, 404.

Valdez filed a 28 U.S.C. § 2255 motion seeking to set aside his conviction on grounds "that his trial counsel was ineffective in substantially underestimating [his] Guidelines range and therefore failing to advise [him] that he faced a significant risk of receiving the statutory maximum term of imprisonment." *Id.* at 402. In his motion, he alleged "that his attorney did not tell him about the cross-reference provision of the Guidelines and instead advised that his Guidelines range was [between 24 and 33 months]." *Id.*

This court rejected Valdez's argument concluding that he had "fall[en] short of demonstrating an unreasonable deficiency" under *Strickland. Id.* at 403. Although counsel had underestimated the applicable guidelines range, we noted that counsel had nonetheless "properly apprised [the defendant], prior to his pleading guilty, of the maximum penalty the

court could impose" and had "made abundantly clear to [the defendant] that no estimation he offered was a guarantee or a promise." *Id.* at 404. In addition, we noted that post-*Booker*, "it is axiomatic" that "the court is entitled to impose a variance outside the Guidelines range." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 46–51 (2007)).

Here, similar to *Valdez*, Alston was aware that his statutory maximum was 20 years and that any estimated sentence by his attorney or the Government was not a promise. In his written plea agreement and at rearraignment, he was advised that he faced a maximum 20-year sentence, and he expressly confirmed that he received no promises beyond those in the plea agreement. Moreover, his plea agreement also advised him "that a final determination of the applicable guidelines range [could not] be made until the completion of the presentence investigation." Alston's attorney's inaccurate estimation of his potential sentence under the Guidelines was not based on a misunderstanding of the Guidelines, but rather on an apparent belief that the information received from the Government regarding the methamphetamine's purity prior to rearraignment was not subject to change. Additionally, counsel argued vehemently by objecting to the PSR and by renewing that objection at sentencing that Alston should be sentenced in accordance with an offense level based off of a methamphetamine mixture, rather than actual methamphetamine. But the district court rejected counsel's arguments for a lower sentence as it was entitled to do. Alston cannot now feign surprise at his higher sentence because he was directly informed numerous times by the sentencing judge that his sentence was "up to" the court and that he could be sentenced up to a maximum of 20 years.

In light of these considerations, we hold that the record does not support Alston's argument that his attorney's performance was deficient under *Strickland*, 466 U.S. at 687. Rather, the record clearly indicates that his attorney fought hard for a lower sentence but simply could not prevail given

the exceedingly high purity level of the methamphetamine that Alston and his co-conspirators chose to utilize in their illegal drug operations. Given that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms," Alston's counsel has met that standard on this record. *Id.* at 688; *see also Thomas*, 27 F.3d at 326 ("As we have shown, the district court correctly concluded, on the basis of the prior proceedings and the allegations of the § 2255 motion, that the failure of [the defendant's] lawyer to inform him that he could be sentenced as a career offender did not constitute ineffective assistance of counsel.").

### B. Prejudice

In addition to failing to show that his counsel performed deficiently, Alston has likewise failed to show prejudice. *See Strickland*, 466 U.S. at 687. As previously stated herein, in the context of a guilty plea, a defendant can only show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The focus of this inquiry is on what motivated the individual defendant's decision-making. *See Lee v. United States*, 137 S. Ct. 1958, 1966 (2017). The Supreme Court has emphasized, however, that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1967. Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Factors relevant to the inquiry include "the risks [the defendant] would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments." *Valdez*, 973 F.3d at 403 (internal quotation marks and citation omitted).

In *Valdez*, this court recounted the sequence of events leading to Valdez's plea, which suggested that he was motivated to plead guilty not by

his attorney's prediction regarding his sentence, but by the "exposure of evidence which proved fatal to his affirmative defense, all but guaranteeing a conviction at trial." *Id.* at 404, 406 (quote at 406). There, we held that Valdez's argument failed under the prejudice prong of *Strickland* for the additional reason that he was "clearly advised—multiple times" of the statutory maximum by both the district court and his attorney and was "fully aware of his plea's consequences." *Id.* at 405 (internal quotation marks and citation omitted). As we explained, Valdez's statements during his plea colloquy, wherein he confirmed his understanding of the consequences of pleading guilty, "serve[d] as evidence relevant to understanding his decision-making at the time." *Id.* at 405–06.

Alston's circumstances in this appeal largely mirror those of the defendant in *Valdez*. As the Government aptly points out, the record contains substantial evidence in support of Alston's conviction. Additionally, numerous other co-defendants from the conspiracy who had already pleaded guilty would have been motivated to testify against him to reduce their own sentences. Finally, as was the case in *Valdez*, Alston was clearly admonished by the sentencing court during his plea colloquy that he faced a maximum of 20 years regardless of his counsel's advice, and he indicated at that hearing that he understood. His awareness is further supported by his signature on the plea agreement expressly providing that his maximum sentencing

No. 21-30090

exposure was 20 years. For these reasons, we hold that Alston has failed to show prejudice under *Strickland*, 466 U.S. at 687.[3]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Alston's 28 U.S.C. § 2255 motion on grounds that he has failed to show that his counsel's performance was deficient or prejudicial under *Strickland*, 466 U.S. at 687.

―――――――――――――――――

[3] Alston urges in his § 2255 motion that he "inform[ed] [his] attorney of the fact that [he] wished/desired to withdraw [his] plea" but his counsel stated, "listen, you don't want to go in there pissing the judge off or making him see you any worse than he probably already does, so just chill out and let me handle this." Even if Alston is correct, these statements do not establish deficient performance or prejudice under *Strickland*, 466 U.S. at 687. At most, counsel's advice against Alston withdrawing his plea was a strategic decision that ultimately had no bearing on Alston's ultimate sentence given the substantial evidence submitted by the Government in support of his conviction. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("As to counsel, we have often explained that strategic decisions . . . are entitled to a 'strong presumption' of reasonableness." (citation omitted)); *see also Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision . . . must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").